IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCHUYLER LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 2219 |
| | ) |
| JODY WEIS, CITY OF CHICAGO, S.P. | ) |
| LIEBHABER, Officer Star #4585, | ) |
| Chicago Police Department, | ) |
| Z. MATYSIAK, Officer, Star #6353, | ) |
| Chicago Police Department, and | ) |
| UNKNOWN CHICAGO POLICE | ) |
| OFFICER, | ) |
| | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Late on the night of March 3, 2009, plaintiff Schuyler Lewis was driving when he was stopped by defendants, Chicago police officers Scott Liebhaber and Zuzanna Matysiak (jointly "Named Officers"). Also named as defendants are the City of Chicago and an unknown Chicago police officer (hereinafter "Unknown

Officer").[1] Plaintiff was eventually placed under arrest when it was discovered that he had an outstanding warrant.

According to the allegations of the Complaint, the following occurred incident to plaintiff's arrest. After the Named Officers stopped plaintiff, the Unknown Officer arrived. Matysiak pulled plaintiff from his car, causing plaintiff to drop his cell phone and car keys on the ground. Unknown Officer allegedly picked up the phone and keys and departed with them. After plaintiff could not provide his car keys for the Named Officers, Liebhaber repeatedly punched plaintiff in the stomach while demanding the car keys. Matysiak did not do anything to stop Liebhaber's attack. Plaintiff finally convinced Liebhaber that he did not have the keys. Liebhaber made a telephone call and, ten minutes later, the Unknown Officer returned. He brought back the phone, but not the keys. While being transported in the back seat of the Named Officers' squad car, plaintiff became fearful for his life. Although not expressly stated in the Complaint, plaintiff contends that, while driving in the squad car, Liebhaber pointed his gun at

---

[1] Although his name remains in the case caption, former Chicago Police Superintendent Jody Weis was previously dropped as a defendant when appointed counsel filed plaintiff's Third Amended Complaint (hereinafter the "Complaint"), the currently pending complaint.

plaintiff. Before taking him into the police station, the Named Officers parked in an alley for several minutes, causing further fear.

The Complaint contains nine Counts. Count I is a § 1983 excessive force claim against Liebhaber. Count II is a § 1983 claim against Matysiak that she failed to intervene to prevent Liebhaber's excessive force. Count III is a §1983 claim against the Unknown Officer that he unreasonably searched and seized plaintiff's phone and keys. Count IV is a state law battery claim against Liebhaber. Count V is a state law intentional infliction of emotional distress ("IIED") claim against Liebhaber based on both the punching and threats. Count VI is a state law conversion claim against the Unknown Officer based on taking the car keys. Count VII is a state law trespass to chattels claim against the Unknown Officer based on taking the phone and keys. Count VIII is a state law *respondeat superior* claim against the City based on the state law claims against the City's employees. Count IX is an indemnity claim against the City, see 745 ILCS 10/9-102, based on both the state and federal claims against the officers.

Presently pending is defendants' motion for partial summary judgment. The City moves to dismiss all the claims against the Unknown Officer on the ground that he has not been named within the applicable statute of limitations

period nor has he been named, identified, or served before discovery closed. Alternatively, it moves to dismiss the phone-aspect of Count VII on the merits. Matysiak moves to dismiss Count II to the extent it is based on Liebhaber pointing a gun at plaintiff on the ground that evidence does not support that she had an opportunity to intervene to prevent that alleged assault. Liebhaber moves to dismiss the Count V IIED claim on the ground that evidence does not support that plaintiff suffered the harm necessary for such a claim. To the extent claims against the officers are dismissed, the City seeks dismissal of the related Count VIII and IX claims against it.[2]

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any

---

[2]In the body of defendants' briefs, the City does not appear to contend that the statute of limitations and service arguments regarding the Unknown Officer apply to the related claims against the City. In the motion itself and both briefs' conclusions, however, defendants request that "all" of Counts III, VI, and VII be dismissed.

genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The facts set forth below resolve all genuine factual disputes and draw all reasonable inferences in plaintiff's favor.

Since the Unknown Officer has not yet been named, identified, or served, he will presently be dismissed from this action without prejudice. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007); *Hale v. Pace*, 2011 WL 1303369 *6 (N.D. Ill. March 31, 2011); *Coffey v. United States*, 2011 WL 6013611 *16-17 (D.N.M. Nov. 28, 2011). Whether any of the claims against the Unknown Officer are untimely will not presently be considered.[3] If plaintiff ever identifies the Unknown Officer and brings suit against him, any statute of limitations defense personally raised by the Unknown Officer can be resolved at that time. The City itself has no statute of limitations defense since it was named

---

[3]Plaintiff contends the statute of limitations would be equitably tolled based on his diligent attempt to identify the Unknown Officer and defendants' failure to provide information identifying him.

as a defendant within the statute of limitations period. Also, the Count VIII *respondeat superior* claim may be pursued against the City even if its employee is not a party to the lawsuit. ***McCottrell v. City of Chicago***, 135 Ill. App. 3d 517, 481 N.E.2d 1058, 1059-60 (1st Dist. 1985); ***Williams***, 509 F.3d at 405; ***Prate v. Vill. of Downers Grove***, 2011 WL 5374100 *5-6 (N.D. Ill. Nov 7, 2011); ***Beal v. City of Chicago***, 2007 WL 1029364 *14 (N.D. Ill. March 30, 2007). As long as the employee is sufficiently identified, as is true in the present case, it does not matter that the employee could not be named. ***Williams***, 509 F.3d at 405; ***Gordon v. Degelmann***, 29 F.3d 295, 299 (7th Cir. 1994); ***Prate***, 2011 WL 5374100 at *5-6; ***Hale***, 2011 WL 1303369 at *12 n.8, *13 n.9. To the extent it is based on the Unknown Officer's conduct, the City is entitled to dismissal (without prejudice) of the Count IX claim. Indemnity under § 9-102 is dependent on the employee being found liable for damages, *see* ***Wilson v. City of Chicago***, 120 F.3d 681, 685 (7th Cir. 1997), which cannot happen with the Unknown Officer dismissed from this case.

Plaintiff properly limited his *respondeat superior* claim against the City to state law claims. So claims against the City based on the Unknown Officer's conduct are limited to the claims alleged in Counts VI and VII. Count III, a

federal claim based on the Unknown Officer's conduct, will be dismissed without prejudice in its entirety. As to Count VII, defendant contends that claim fails as regards plaintiff's cell phone because the phone was properly taken as part of the inventory of plaintiff's possessions when he was arrested. No such argument is made regarding the car keys which evidence supports were not inventoried.

Trespass to personal property/chattel is an antiquated cause of action that has reemerged in recent years, mostly regarding claims involving abuses of email and the Internet. *See* ***Sotelo v. DirectRevenue, LLC***, 384 F. Supp. 2d 1219, 1229-30 (N.D. Ill. 2005). "[T]here are two ways to commit this tort: 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.' *Restatement (Second) Of Torts*, § 217. Harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can also result in liability. *Restatement (Second) Of Torts*, § 218(b)." *Id.* at 1229. Causation and damages are also elements of a trespass to chattel claim. *Id.* at 1230. ***Sotelo*** held that trespass to a chattel is distinct from a claim of conversion in that the "plaintiff does not allege his property is in defendant's possession or has been rendered entirely worthless, but rather that it was interfered

with. *See* W. Prosser & W. Keeton, *Torts* § 14, 85-86 (5th ed. 1984) ('[The claim of trespass to personal property's] chief importance now, is that there may be recovery . . . for interference with the possession of chattels which are not sufficiently important to be classified as conversion. . . .'); ***CompuServe Inc. v. Cyber Promotions, Inc.***, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) ('A plaintiff can sustain an action for trespass to chattels, as opposed to an action for conversion, without showing a substantial interference with its right to possession of that chattel.')." 384 F. Supp. 2d at 1229-30. In discussing a claim for conversion, the Illinois Supreme Court approvingly noted: "if one cuts, carves, lacerates, incises, or otherwise alters someone else's property except as authorized by that person, one commits a classic tort: either trespass to chattels or conversion, depending on the extent of the alteration." ***Loman v. Freeman***, 229 Ill. 2d 104, 890 N.E.2d 446, 461 (2008) (quoting court below, 375 Ill. App. 3d 445, 874 N.E.2d 542, 552 (4th Dist. 2006)).

The City contends the Unknown Officer did not unlawfully interfere with the cell phone because he simply followed proper procedures for inventorying property during an arrest. Evidence supports that plaintiff's cell phone dropped on the ground when plaintiff exited his car. The Unknown Officer

picked up the phone and, while plaintiff remained in Named Officers' custody, the Unknown Officer drove off with the phone. When called by Liebhaber, the Unknown Officer brought the phone back. It is undisputed that the phone was inventoried at the police station, though it is unclear by whom. Evidence, however, supports plaintiff was not provided a copy of the inventory nor told how to claim inventoried property. He was given a small receipt with numbers on it, but no instructions how to recover his property. Neither side presents evidence nor states any facts in their briefs or statements of fact regarding whether plaintiff ever recovered the phone or, if so, whether there was a delay because he was not provided an inventory.[4]

Evidence does not support that the Unknown Officer continued to participate in plaintiff's arrest and booking and was taking the phone for purposes of an inventory related to the arrest. But even if the Unknown Officer's taking of the phone was unlawful, plaintiff presents no evidence that any damage was caused by the Unknown Officer's temporary taking of the phone. There is no

---

[4]Apparently, since the time of his March 2009 arrest, plaintiff was detained or incarcerated at Cook County Jail and state correctional facilities until his release in May 2011. He would not have been able to have his phone at those facilities. There is also no evidence cited nor contention that, during plaintiff's detention, any authorized agent of plaintiff was unable to obtain the release of plaintiff's inventoried phone.

evidence the phone was physically damaged in any way while in the Unknown Officer's possession. Also, while the Unknown Officer had the phone, plaintiff was in the process of being arrested and questioned by the Named Officers. Therefore, plaintiff would not have been able to use the phone during that time. So the Unknown Officer's taking of the phone also did not deprive Plaintiff of the use of his phone. Plaintiff would have no trespass to chattel claim against the City based on *respondeat superior* liability for the Unknown Officer's conduct regarding plaintiff's phone. Plaintiff makes reference to the failure to properly follow inventory procedures. But, again, there is no evidence that this caused any damage to plaintiff; he does not show, or even assert, that he was unable to recover his phone from the inventory. The *respondeat superior* claim will be dismissed to the extent it is based on a taking of plaintiff's cell phone.

Next to be considered is the federal claim that Matysiak failed to intervene to prevent Liebhaber from pointing a gun at plaintiff. Defendants do not contend that Liebhaber pointing the gun would not constitute excessive force; the only contention is that Matysiak's inaction could not have been wrongful because she did not have an adequate opportunity to intervene. Plaintiff testified that Liebhaber repeatedly punched him while at the arrest scene. He also testified that

the Named Officers did not drive him directly to the police station, further causing him to be fearful of what they might do to him. Matysiak was driving and Liebhaber was in the passenger seat. Plaintiff was cowered on the floor of the back seat. He was pleading with the officers not to harm him. At one point, Liebhaber turned toward plaintiff, pointed a gun at him, and stated he would shut plaintiff up if plaintiff didn't otherwise shut up.[5] Plaintiff was unsure whether the car was moving at this time; it may have been parked in an alley at the time. Plaintiff does not testify how long the gun was pointed at him. Matysiak did not say anything when Liebhaber pointed the gun.

For Matysiak to be liable, she must have had "a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). While this is often a question of fact for the jury; there are fact situations where the jury could only conclude that there was no reasonable opportunity. *Abdullahi*, 423 F.3d at 774 (quoting *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)). In *Lanigan*, 110 F.3d at 478,

---

[5]Both when plaintiff first begged not to be harmed and whether Liebhaber told him to shut up at the same time he was pointing the gun at plaintiff are unclear from plaintiff's testimony. All reasonable inferences, however, are being drawn in plaintiff's favor.

allegations that a police chief did nothing when a sergeant gave the plaintiff "one poke and push and a contemporaneous statement" were insufficient to support that the police chief had a realistic opportunity to intervene. There was no subsequent excessive force by the sergeant, so the chief saying or doing something after the poke and push would not have prevented anything.

Here, the evidence only supports a brief pointing of the gun, just long enough to make the statement about plaintiff shutting up. There is also no evidence that Liebhaber gave any advance indication that he was going to pull his gun. Further, there is no evidence that, subsequent to the gun-pointing, Liebhaber engaged in further excessive force. Since the gun-pointing was brief, evidence does not support that Matysiak could have done anything to end it quicker. *Compare* ***Armstrong v. Furge***, 2007 WL 496381 *5-6 (N.D. Ind. Feb. 12, 2007) (in front of a number of officers a gun was held to plaintiff's head for a few minutes). And since Liebhaber did not engage in further excessive force, even if Matysiak had belatedly said something, it would not have prevented further excessive force. *See* ***Lanigan***, 110 F.3d at 478.

Plaintiff contends Matysiak could have at least assured plaintiff that he would not be harmed or killed. Plaintiff, however, cites no case law supporting

that alleviating a plaintiff's fear and anxiety following the commission of excessive force is part of the duty to intervene. That is more in the nature of a claim of deliberate indifference to medical needs, the medical needs being psychological in nature. Plaintiff does not contend he has such a claim, nor cite any case law supporting such a claim. Count II will be dismissed to the extent it is based on Matysiak failing to intervene to prevent the gun-pointing incident and the related Count IX indemnity claim against the City will be dismissed to the extent it is based on this conduct. Count II still remains pending as to Matysiak's alleged failure to intervene to prevent Liebhaber's assault on plaintiff at the scene of the arrest.

The last claim to consider is the Count V IIED claim. The elements of IIED are: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant intended his conduct to inflict severe emotional distress or knew that there was a high probability that it would do so; and (3) the defendant's conduct did in fact cause severe emotional distress." *Cartwright v. Cooney*, 788 F. Supp. 2d 744, 755 (N.D. Ill. 2011). On summary judgment, defendants' only contention is that plaintiff cannot show he suffered severe emotional distress.

Illinois courts have explained that:

> The emotional distress must be severe. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term "emotional distress," these mental conditions alone are not actionable. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity."
>
> *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 713 N.E.2d 679, 684 (1999) (emphasis in original) (quoting *Public Fin. Corp. [v. Davis*, 66 Ill. 2d 85,] 360 N.E.2d [765,] 768 [(1976)]), *appeal denied*, 185 Ill. 2d 669, 720 N.E.2d 1107 (1999). Indeed, over time, Illinois courts have delineated with some precision the type of emotional distress that is sufficiently severe to meet the law's requirements. More specifically, when plaintiffs have complained that a defendant's actions caused them simply to become annoyed, frustrated, stressful, distressed, embarrassed, humiliated or nervous, those plaintiffs have been found not to have stated a claim under Illinois law. [Footnote omitted.] In contrast, when the distress has manifested itself either through physical symptoms or has necessitated medical treatment, Illinois courts have been more inclined to characterize the emotional distress as severe. [Footnote omitted.] Yet neither physical injury nor the need for medical treatment is a necessary prerequisite to establishing severe emotional distress. *See Bristow v. Drake St. Inc.*, 41 F.3d 345, 349-50 (7th Cir. 1994); *Corgan [v. Muehling*, 143 Ill. 2d 296,] 574 N.E.2d [602,] 609 [(1991)]; *Clark v. Owens-Brockway Glass Container, Inc.*, 297 Ill. App. 3d 694, 697 N.E.2d 743, 748 (1998). In some instances, when no physical manifestation of the emotional distress existed and where no medical treatment was sought, Illinois courts have still found that a plaintiff could establish severe emotional distress. *See, e.g., Amato v. Greenquist*, 287 Ill. App. 3d 921, 679 N.E.2d 446, 455 (1997)

(plaintiff satisfactorily alleged that minister's actions caused him distress, when minister abused counseling relationship with plaintiff's wife by engaging in affair with her, causing "depression, despair, insomnia, anxiety, nervousness and emotional trauma" in plaintiff); **Vance [v. Chandler**, 231 Ill. App. 3d 747,] 597 N.E.2d [233,] 237 [(1992)] (plaintiff could survive motion to dismiss when her estranged husband allegedly conspired to have her murdered, which caused her to become "extremely fearful for her life, safety, health and welfare" and to suffer "great emotional distress").

Additionally, some Illinois cases have noted the principle, stated in the *Second Restatement of Torts*, that "[s]evere distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." **Wall [v. Pecaro**, 204 Ill. App. 3d 362,] 561 N.E.2d [1084,] 1088 [(1990)]; *see also* **Kolegas [v. Heftel Broadcasting Corp.**, 154 Ill. 2d 1,] 607 N.E.2d [201,] 213 [(1992)]. These cases have acknowledged that, even when significant evidence was not presented as to the severity of distress, the very nature of the conduct involved may be evidence of its impact on the victim. *See* **Kolegas**, 607 N.E.2d at 213 (when radio station knew plaintiffs had neurofibromatosis and nevertheless made false and highly offensive comments regarding the effects of the disease upon their personal appearance, severe distress presumed); **Wall**, 561 N.E.2d at 1088 (when plaintiff alleged that physician harassed her to have surgery removing part of her head's internal structures and tissues and to abort her fetus, all to cover up previous medical malpractice on his part, severe distress presumed). In **Bristow v. Drake Street Inc.**, 41 F.3d 345 (7th Cir. 1994), we extensively discussed when emotional distress is sufficiently severe under Illinois law. In the course of that discussion, we also took note that Illinois courts, following the Restatement, have "tend[ed] to merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the

> plaintiff's emotional distress, in effect requiring more
> evidence of outrageousness the weaker the evidence of
> distress." *Id.* (internal citation omitted).

*Honaker v. Smith*, 256 F.3d 477, 495-96 (7th Cir. 2001). *See also Bell v. Vill. of Streamwood*, 2011 WL 4435664 *4-5 (N.D. Ill. Sept. 6, 2011).

Plaintiff testified that following his arrest, he suffered from sleeplessness, including not being able to sleep for two to three days at a time. The general sleeplessness lasted for less than a year. He was confused and felt sad and down and out. Initially, the treatment he received from the officers preoccupied his thoughts. He felt distress, was prone to cry, did not laugh, and felt a need to talk to someone about what had happened. Such thoughts continued after he was transferred out of Cook County Jail. While at Cook County Jail, he requested mental health counseling, but none was ever provided. Plaintiff arrived at Fort Sheridan Correctional Center approximately a year after the incident. He did not request any mental health counseling while at Fort Sheridan, but did continue to have down and out feelings about the incident at least as late as his November 2010 deposition and also continued to have occasional sleeplessness.

The sleeplessness, sadness, and related feelings that plaintiff suffered from generally is not severe enough to constitute severe emotional distress for

purposes of an IIED claim. *See Woods v. Clay*, 2005 WL 43239 *17 (N.D. Ill. Jan. 10, 2005); ***Ponticiello v. Aramark Uniform & Career Apparel Servs., Inc.***, 2006 WL 2699416 *13 (N.D. Ill. Sept. 19, 2006). Plaintiff did seek counseling, but that would not be sufficient to satisfy the severity requirement without related distress that was more severe than plaintiff had. As noted above, the more outrageous the conduct, the less severe the distress need be. While the beating and gun-pointing inflicted by Liebhaber is outrageous, it is not so extreme that plaintiff's burden of showing severe emotional distress is lessened. Plaintiff was punched in the stomach for a significant period of time, but no permanent physical injuries were caused. The ride in the police car lasted less than 20 minutes.

In ***Bell***, 2011 WL 4435664 at *3-5, plaintiff Stacey witnessed his brother Ronald being beaten by a police offer and thereafter suffered sleeplessness, fear of police, and a loss of feeling safe. He did not seek counseling because he did not believe in such treatment. Because of fear, Stacey was also trying to move out of the house where the incident occurred. While recognizing the symptoms were not otherwise severe enough, the court did not dismiss Stacey's IIED claim because the beating that was witnessed was so extreme. In the present case, plaintiff himself suffered the beating, but it was not as severe as the beating

suffered by Ronald. To the extent the conduct in *Bell* should be considered as outrageous as the conduct in the present case, this court respectfully disagrees with the result in *Bell*. Holding that Lewis fails to satisfy the severity requirement is consistent with *Woods*, *supra*, and other precedent.

Plaintiff cites *Puch v. Vill. of Glenwood, Ill.*, 2008 WL 4442610 (N.D. Ill. Sept. 25, 2008). That case is distinguishable in that Puch suffered more severe distress than Lewis. Following his encounter with officers, Puch was taken to the hospital, he was subsequently transferred to a mental health facility, his post-traumatic stress syndrome was aggravated, he had frequent nightmares, and his suicidal thoughts increased. *Id.* at *10.

The Count V IIED claim against Liebhaber and the corresponding aspect of the *respondeat superior* claim against the City will be dismissed.

The parties should attempt to settle this case. Within one week, plaintiff should submit a written demand for settlement. Within one week thereafter, defendants should respond to the demand. In preparing a proposed final pretrial order, the parties should consider narrowing the remaining issues so as to limit the possibility of jury confusion. For example, plaintiff should consider whether the potential monetary recovery merits continuing to pursue the conversion/trespass

claim regarding the car keys. He should also consider whether he should continue to pursue the failure to intervene claim since it requires proof of excessive force for which he would otherwise obtain a full recovery from Liebhaber with the City indemnifying any recovery. Assuming there are no issues regarding the officers acting within their scope of employment, the City should consider stipulating before the jury that any scope of employment element is satisfied. Alternatively, the City could stipulate that it will be liable for any liability of the officers, thereby avoiding having to instruct the jury regarding liability of the City.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [69] is granted in part and denied in part. Defendant Unknown Chicago Police Officer is dismissed without prejudice. Counts III, VI, and VII are dismissed without prejudice. Count II in part is dismissed with prejudice to the extent it is based on the gun-pointing. Count V is dismissed with prejudice. Count VIII is dismissed in part with prejudice: as regards intentional infliction of emotional distress and the taking of plaintiff's cell phone. Count IX is dismissed in part with prejudice: as regards intentional infliction of emotional distress and Matysiak's failure to intervene to prevent the gun-pointing, and without prejudice

as regards conduct of the Unknown Officer. In open court on February 23, 2012 at 11:00 a.m., the parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions, motions in limine with supporting briefs, and proposed jury instructions.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 5, 2012